**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | |
| BUILDERS HOLDING CO., CORP., | CASE NO. 16-06443 (EAG) |
| DEBTOR. | CHAPTER 7 |
| NOREEN WISCOVITCH RENTAS, Trustee for the Estate of BUILDERS HOLDING CO., CORP., | |
| PLAINTIFF, | ADV. PROCEEDING NO. 17-00012 |
| v. | |
| ORIENTAL BANK  and the PUERTO RICO FINANCING AUTHORITY, | |
| DEFENDANTS. | |
| MAPFRE PRAICO INSURANCE COMPANY AND ENDURANCE ASSURANCE, | **FILED & ENTERED ON 3/31/2020** |
| INTERVENOR-PLAINTIFF, | |
| v. | |
| ORIENTAL BANK, BUILDERS HOLDING CO., CORP., and the PUERTO RICO FINANCING AUTHORITY. | |
| INTERVENOR-DEFENDANTS , | |
| ORIENTAL BANK, | |
| COUNTER-CLAIMANT, | |
| v. | |
| BUILDERS HOLDING CO., CORP., and MAPFRE PRAICO INSURANCE COMPANY AND ENDURANCE ASSURANCE, | |
| COUNTER-DEFENDANTS. | |

**OPINION AND ORDER**

While seeking reorganization under chapter 11, debtor Builders Holding Co., Corp. filed a complaint against the Puerto Rico Financing Authority and Oriental Bank under Puerto Rico law and sections 542, 543, and 547 of the Bankruptcy Code.[1]  The complaint prays for judgment directing the Financing Authority to pay again progress-payment money deposited by mistake in the debtor's account at Oriental Bank, but that had to be paid to Mapfre PRAICO Insurance Company and Endurance Assurance Corporation under an agreement of indemnity. The Financing Authority admits to the mistake and attempted to reverse the electronic deposit, but was unable to do so because Oriental Bank setoff most of the money against a secured debt of the debtor under a line of credit.  The debtor requested, in the alternative, that the court enter judgment ordering Oriental Bank to return the money it setoff.

The court allowed MAPFRE to intervene in the case since it had an interest in the money at the time of the deposit in the debtor's bank account at Oriental Bank.  As a result, MAPFRE filed an intervenor's complaint against the debtor, the Financing Authority, and Oriental Bank, requesting the turnover of the money.

In turn, Oriental Bank counterclaimed against the debtor and MAPFRE claiming it had a valid and enforceable lien over the debtor's accounts receivables under the Puerto Rico Commercial Transactions Act (P.R. Law. Ann. tit. 19 §§ 401-2409) (hereinafter "the CTA") and

---

[1]Unless otherwise indicated, the terms "Bankruptcy Code," "section"and "§" refer to title 11 of the United States Code, 11 U.S.C. §§ 1010-1532, as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

that it exercised its right to setoff a debt under Puerto Rico law.  Oriental contends that in this case the requirements for setoffs under section 553 were met, and that its setoff is not subject to either section 542 or 547.

The debtor eventually moved to convert to chapter 7 and a trustee was appointed to the case.

Pending before the court are four cross-motions for summary judgment: (i) the debtor's, now represented by the chapter 7 trustee, against Oriental Bank and the Financing Authority [Adv. Dkt. Nos. 73, 74 & 75 ]; (ii) MAPFRE's, against Oriental Bank and the Financing Authority [Adv. Dkt. No. 92]; (iii) the Financing Authority's, against Oriental Bank [Adv. Dkt. No. 93]; and (iv) Oriental Bank's, against MAPFRE and the debtor [Adv. Dkt. Nos. 110, 111, 112 & 114.]  The chapter 7 trustee has joined MAPFRE's position.  [Adv. Dkt. No. 136.]

For the reasons stated below, the motions for summary judgment filed by MAPFRE [Adv. Dkt. No. 92] and joined by the trustee [Adv. Dkt. No. 136], and the Financing Authority [Adv. Dkt. No. 93] are granted.  Oriental Bank is ordered to turn over to MAPFRE and the chapter 7 trustee, jointly, the money it setoff from the debtor's bank account.

## I.  JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). While Oriental Bank had argued that this is a non-core proceeding that would exist outside of bankruptcy, it has consented that this court hear the matter and enter final judgment.  [Adv. Dkt. No. 9, ¶14.]

3

## II. PROCEDURAL BACKGROUND

On August 20, 2016, debtor Builders Holding Co., Corp. filed a chapter 11 bankruptcy petition, which was docketed as case number 16-06643. [Bankr. Dkt. No. 1.] The debtor commenced, on January 12, 2017, this adversary proceeding against the Financing Authority and Oriental Bank. [Bankr. Dkt. No. 172; Adv. Dkt. No. 1.]

On May 19, 2017, the court held an initial scheduling conference where it granted in open court a pending motion for MAPFRE to intervene in the case. [Adv. Dkt. Nos. 26, 28 & 38.] On May 26, 2017, MAPFRE filed an amended intervenor's complaint against the debtor, the Financing Authority, and Oriental Bank. [Adv. Dkt. No. 39.] On June 2, 2017, Oriental Bank answered the complaint and counterclaimed against the debtor. [Adv. Dkt. No. 43.] On the same date, Oriental bank answered the intervenor's complaint and counterclaimed against MAPFRE. [Adv. Dkt. No. 44.] On June 2, 2017, the Financing Authority answered the debtor's and MAPFRE's complaints. [Adv. Dkt. Nos. 45 & 46.] On June 27, 2017, MAPFRE answered Oriental Bank's counterclaim. [Adv. Dkt. No. 49.] On July 11, 2017, the debtor answered both the counterclaim filed by Oriental and MAPFRE's complaint. [Adv. Dkt. Nos. 51 & 52.]

On November 16, 2017, the debtor moved for summary judgment against the Financing Authority and Oriental Bank. [Adv. Dkt. Nos. 73, 74 & 75.] On November 29, 2017, the debtor supplemented its motion for summary judgment with certified English translations of documents filed at docket number 74. [Adv. Dkt. No. 79.] On April 12, 2018, MAPFRE moved for summary judgment against the debtor, Oriental Bank, and the Financing Authority. [Adv. Dkt. No. 92.] And, on April 13, 2018, the Financing Authority moved for summary judgment against Oriental Bank. [Adv. Dkt. No. 93.] On April 18, 2018, the Financing Authority

supplemented its motion for summary judgment with a declaration under penalty of perjury. [Adv. Dkt. No. 97.] On April 19, 2018, Oriental Bank opposed the debtor's motion for summary judgment. [Adv. Dkt. Nos. 99, 100 & 101.]

On April 27, 2018, the debtor moved to convert its chapter 11 case to chapter 7, which the court granted on the same date. [Bankr. Dkt. Nos. 396 & 398 .]

On May 4, 2018, Oriental Bank supplemented its response to the debtor's motion for summary judgment with certified translations of supporting documents. [Adv. Dkt. No. 108.] On May 25, 2018, Oriental Bank opposed the motions for summary judgment filed by MAPFRE and the Financing Authority. [Adv. Dkt. Nos. 110, 111 & 112.] On June 14, 2018, MAPFRE replied to Oriental Bank's opposition. [Adv. Dkt. No. 113.] On June 20, 2018, Oriental Bank also supplemented its legal brief filed at docket numbers 101 and 112. [Adv. Dkt. No. 114.]

On July 20, 2018, the court stayed this adversary proceeding pending a report from the trustee given the conversion to chapter 7 of the case. [Adv. Dkt. No. 126.]

On May 1, 2019, MAPFRE and the chapter 7 trustee filed a stipulation in the main bankruptcy case where they agreed that the trustee would prosecute this adversary jointly with MAPFRE until its resolution; that MAPFRE would cover all attorneys' fees and costs incurred in said prosecution; that MAPFRE would pay $25,000 for the benefit of unsecured creditors regardless of the outcome of the case; and that MAPFRE would pay an additional $25,000 if the court rules in favor of MAPFRE and the trustee. [Bankr. Dkt. No. 509.] The court approved the stipulation on May 28, 2019. [Bankr. Dkt. No. 513.]

On August 23, 2019, the court ordered the chapter 7 trustee to state whether she joined MAPFRE's motion for summary judgment at docket numbers 92 and 93.[ Adv. Dkt. No. 136.]

On September 13, 2019, the trustee filed her motion in compliance with the order and a legal brief. [Adv. Dkt. No. 136.] On September 20, 2019 Oriental Bank filed a motion for leave to reply to the trustee's brief at docket number 136 and submitted its brief. [Adv. Dkt. No. 137.]

### III.  UNCONTESTED FACTS

The following facts are uncontested pursuant to Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rule 7056 and Local Bankruptcy Rules 1001-1(b) and (d), as found in the record of this case and the statements of proposed uncontested facts filed by the parties:

### a.  *Agreement of Indemnity between C.D. Builders and MAPFRE*

On August 5, 2010, C.D. Builders, Inc. executed an Agreement of Indemnity with MAPFRE.  [Plaintiff's Statement of Proposed Facts ("SUF") ¶ 1, Adv. Dkt. No. 74; Agreement of Indemnity, Adv. Dkt. No. 74, pp. 8-21.] [2]  C.D. Builders promised to exonerate, hold harmless, and indemnify MAPFRE for any and all actual or potential loss as a consequence of the execution of bonds on its behalf.  [Plaintiff's SUF ¶ 2, Adv. Dkt. No. 74; Agreement of Indemnity, Adv. Dkt. No. 74, p. 9 at ¶3.]

To comply with its indemnity obligations, C.D. Builders assigned to MAPFRE all rights, title, and interest in all bonded contracts, including its rights to any and all sums due or which may become due under all bonded contracts. [Plaintiff's SUF ¶ 3, Adv. Dkt. No. 74; Agreement of Indemnity, Adv. Dkt. No. 74, p. 10 at ¶4.]

---

[2] C.D. Builders, Inc. and CDC Maintenance Group, Corp. merged into the debtor on June 29, 2016. [Adv. Dkt. No. 1, ¶14.]

Paragraph 8 of the Agreement of Indemnity provides the following:

All payments received for or on account of any CONTRACT shall be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any CONTRACT and for labor, materials, and services furnished in the prosecution of the work in any CONTRACT or any extension or modification thereof. All moneys due and to become due under any CONTRACT are also trust funds, whether in the possession of PRINCIPAL, INDEMNITORS or otherwise. The trust funds shall be for the benefit and payment of all obligations for which SURETY may be liable under any BONDS. The trust funds shall inure to the benefit of SURETY for any liability or loss it may have or sustain under any BOND, and this Agreement and declaration constitute notice of such trust.

[Plaintiff's SUF ¶¶ 4-7, Adv. Dkt. No. 74; Agreement of Indemnity, Adv. Dkt. No. 74, p. 11 ¶8.]

On August 30, 2010, the Agreement of Indemnity was registered in the Department of State of Puerto Rico as a financing statement pursuant to the provisions of the Commercial Transactions Act, under registry number 20100004744.  [Plaintiff's SUF ¶¶ 8-9, Adv. Dkt. No. 74; Official certification of financing statements registered in the records of the Department of State, Adv. Dkt. No. 92-4.]

**b. Cash Management and Line of Credit Agreements between C.D. Builders and Oriental Bank**

On November 14, 2013, C.D. Builders executed a Cash Management Agreement with Oriental Bank, regarding charge account number 1310050386.  [Oriental's  SUF ¶1, Adv. Dkt. No. 111; Plaintiff's answer to Oriental Bank's counterclaim, Adv. Dkt. No. 51, ¶2.] C.D. Builders would regularly draw checks and make daily disbursements from the operational account, as well as receive payments and deposits related to its regular business operation. [Oriental Bank's  SUF ¶2, Adv. Dkt. No. 111; Bank Statement, Adv. Dkt. No. 111-2.] C.D. Builders  was the owner of the bank account in which the money claimed was deposited. [Oriental Bank's  SUF ¶3, Adv. Dkt. No. 111; Bank Statement, Adv. Dkt. No. 111-2.]

On December 26, 2014, C.D. Builders executed with Oriental Bank a line of credit agreement for two operational lines of credit. [Oriental Bank's SUF ¶ 4, Adv. Dkt. No. 111; Loan Contract,  Adv. Dkt. No. 111-1.]

Section 6.2. of the agreement states in pertinent part:

**Section 6.2. <u>Obligations and Inaction Agreements.</u>** While any payment of the Credit Facilitation is pending or other advances made under the terms of this Contract, or there subsist the Bank's obligation to make advances under the terms of this Contract, unless there is obtained prior agreement in writing from the Bank, the Debtor is obligated to:

(c) Disallow the existence of any mortgage, pledge, surrender, or any other lien or preferential agreement over any nature on the Collateral, except for: (i) liens allowed under the terms of this Contract; (ii) liens for federal or state taxes that have not expired or are due, or proceedings pursuant to law regarding ones for which the Debtor has established adequate reserves for their payments; and (iii) deposits, pledges, and lines established or constituted to cover bonds for bids, contracts (except contracts for payment of monies), legal obligations, public services, appeals, indemnities, compliance and payment, or other similar obligations that arise in the ordinary course of the Debtor's business.

[Oriental Bank's SUF ¶ 22, Adv. Dkt. No. 111; Loan Contract,  Adv. Dkt. No. 111-1, pp.14-15.]

Section 8.5 of the agreement provides the following:

**Section 8.5. <u>Set-Off.</u>** The Bank is herein authorized to at any time and from time to time to the extreme allowed by law, to compensate and apply any and all deposits (general or special, in installments or on demand, provisional or final) against any obligation by the Debtor that exists or may exist in the future with the Bank. The Bank's rights under this Section are in addition to the other rights and remedies (including, but not limited to other compensation rights) that the Bank may have.

[Oriental Bank's SUF ¶ 22, Adv. Dkt. No. 111; Loan Contract, Adv. Dkt. No. 111-1, p.18.]

To secure the repayment of the line of credit, C.D. Builders executed on December 26, 2014 several pledge agreements in favor of Oriental Bank. [Oriental Bank's SUF ¶ 5, Adv. Dkt. No. 100; Pledge Agreements, Adv. Dkt. Nos. 100-5 –100-11.]

Through a pledge agreement executed on December 26, 2014 before a notary public under affidavit number 3,113, C.D. Builders pledged to Oriental Bank all of its accounts receivable. [Oriental Bank's  SUF ¶ 8, Adv. Dkt. No. 111; Pledge Agreement executed under affidavit number 3,113, Adv. Dkt. No. 111-6.] In the pledge agreement, C.D. Builders represented that the accounts receivable were free and clear of any encumbrance, except for the encumbrance being created therein in favor of Oriental Bank. [Pledge Agreement executed under affidavit number 3,113, Adv. Dkt. No. 111-6, p.2.]

Oriental Bank's secured interest in the collateral pledged by the debtor was recorded in the Puerto Rico Department of State with the record numbers 2013006422, 2014006987, 2014006988, 2014006989, 2014006990, 2014006991, and 201400693. [Oriental Bank's SUF ¶ 13, Adv. Dkt. No. 111; UCC Certification, Adv. Dkt. No. 111-11.]

As per the terms of the line of credit agreement, it matured on December 26, 2015. [Oriental Bank's SUF ¶ 15, Adv. Dkt. No. 111; Loan Contract, Adv. Dkt. No. 111-1, p. 3.]

### c. Construction Agreement between the debtor and the Financing Authority

On September 30, 2015, the Financing Authority and C.D. Builders entered into contract number 2016-0000103, for the construction of a project known as "Revitalización del Poblado de Boquerón en el Municipio de Cabo Rojo." [Plaintiff's SUF ¶ 11, Adv. Dkt. No. 74; MAPFRE's SUF ¶ 5, Adv. Dkt. No. 92-1; Construction Contract, Adv. Dkt. No. 92-5.] In consideration for the execution of the 2010 Indemnity Agreement, MAPFRE issued performance and payment bonds numbered 1301158001048 naming the Financing Authority as obligee and C.D. Builders as principal, to guarantee C.D. Builders' compliance of obligations under the construction contract; and its payment of labor and materials furnished in the

project up to a limit of $3,070,480. [Plaintiff's SUF ¶ 12, Adv. Dkt. No. 74; MAPFRE's SUF ¶ 6, Adv. Dkt. No. 92-1; Bonds, Adv. Dkt. No. 92-6.]

On February 16, 2016, MAPFRE sent a letter to the Financing Authority informing that it had received claims under the bonds in the project; that based upon its equitable right of subrogation and its secured rights under the agreement of indemnity, the entire contract balance on the project was subject to MAPFRE's equitable lien and assignment rights; and pursuant to its legal and equitable subrogation rights, all further payments in connection with the project, including any progress payments, retainage, or additional claim amounts, had to be sent to MAPFRE and made payable jointly to C.D. Builders and MAPFRE. [Plaintiff's SUF ¶¶ 12-13, Adv. Dkt. No. 74; MAPFRE's SUF ¶ 7, Adv. Dkt. No. 92-1; MAPFRE's letter to the Financing Authority, Adv. Dkt. No. 92-7.]

On February 22, 2016, C.D. Builder's President also sent a letter directing the Financing Authority to prospectively send to MAPFRE all progress payments arising under the construction contract and to make them payable jointly to C.D. Builders and MAPFRE. [Plaintiff's SUF ¶ 15, Adv. Dkt. No. 74 MAPFRE's SUF ¶ 8, Adv. Dkt. No. 92-1; C.D. Builder's letter to the Financing Authority, Adv. Dkt. No. 92-8.]

### d. The $537,924.18 electronic deposit made by the Financing Authority

On May 23, 2016, the Financing Authority made an electronic deposit of $537,924.18 directly into C.D. Builder's bank account at Oriental Bank for progress-payment money owed under the construction contract. [MAPFRE's SUF ¶ 9, Adv. Dkt. No. 92-1; ACH transfer made by the Financing Authority to the debtor's account at Oriental Bank, Adv. Dkt. No. 92-9.] And, also on May 23, 2016, Oriental Bank applied $464,757.60 of the money deposited into the

account to pay off the outstanding line of credit. [Oriental Bank's SUF ¶ 20, Adv. Dkt. No. 111; Bank Statement, Adv. Dkt. No. 111-2.]

As of the date of that deposit, MAPFRE had paid $523,166.55 for to labor, materials, and equipment furnished in the bonded project pursuant to its obligations under the bonds and had incurred net aggregate losses under all bonds issued on behalf of C.D. Builders that exceeded the amount of $537,924.18. [MAPFRE's SUF ¶ 10, Adv. Dkt. No. 92-1; Declaration Under Penalty of Perjury executed by Roberto De Soto, Assistant Vice President of MAPFRE, Adv. Dkt. No. 92-10.]

On May 31, 2016, the Financing Authority sent a letter to Oriental Bank stating that its electronic deposit was made by mistake and requesting that Oriental return its money. [Plaintiff's SUF ¶ 20, Adv. Dkt. No. 74; MAPFRE's SUF ¶ 13, Adv. Dkt. No. 92; May 31, 2016 letter, Adv. Dkt. No. 92-13.]

On June 29, 2016, C.D. Builders and CDC Maintenance Group, Corp. merged into the debtor, Builders Holding Co Corp. [Adv. Dkt. No. 1, ¶14.]

On July 1, 2016, MAPFRE also sent a letter to Oriental Bank seeking the return of the money. [Plaintiff's SUF ¶ 22, Adv. Dkt. No. 74; MAPFRE's SUF ¶ 14, Adv. Dkt. No. 92; July 1, 2016 letter, Adv. Dkt. No. 92-14.] On August 20, 2016, Builders Holding filed its chapter 11 bankruptcy petition. [Bankr. Dkt. No. 1.] On December 12, 2017, the Financing Authority sent another letter to Oriental Bank demanding the immediate return of its money. [MAPFRE's SUF ¶ 18, Adv. Dkt. No. 92-1; Letter sent by the Financing Authority to Oriental Bank, Adv. Dkt. No. 92-15.]

As of March 21, 2018, MAPFRE had also incurred losses amounting to $1,069,849.13 due to payments made under the bonds for the project and $7,863,012.93 under all bonds issued on behalf of the debtor. [MAPFRE's SUF ¶ 10, Adv. Dkt. No. 92-1; Declaration Under Penalty of Perjury executed by Roberto De Soto, Assistant Vice President of MAPFRE, Adv. Dkt. No. 92-10.]

### IV. SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well-known. Pursuant to Rule 56, made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that it is "entitled to judgment as a matter of law." Vega-Rodríguez v. P.R. Tel. Co., 110 F. 3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment. McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id. However, not every factual dispute is sufficient to frustrate summary judgment;

the contested fact must be material and the dispute over it must be genuine.  Id.  An issue is "genuine" if it could be resolved in favor of either party.  A fact is "material" if it is potentially outcome-determinative.  See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted).  The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). Thus, "a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." United States

13

v. 100,000 in United States Currency, 305 F. Supp. 3d 238, 245 (D. Mass. 2018) (quoting Dan

Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

"The [trial] court is freed from the usual constraints that attend the adjudication of summary judgment motions" when "'the basic dispute between the parties concerns the factual inferences . . . that one might draw from the more basic facts to which the parties have drawn the court's attention,' where 'there are no significant disagreements about those basic facts,' and where neither party has 'sought to introduce additional factual evidence or asked to present witnesses.'" Equal Employment Opportunity Comm'n v. Steamship Clerks Union 1066, 48 F.3d 594, 603 (1st Cir. 1995) (quoting Federacion de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984)). In those circumstances, "[t]he court may then engage in a certain amount of differential factfinding, including the sifting of inferences." Id.

**V. PARTIES' POSITIONS**

In its pre-conversion motion for summary judgment, the debtor conceded that both MAPFRE and Oriental Bank had their respective security agreements perfected and recorded over the same collateral: the progress-payment money in the account at Oriental Bank. [Adv. Dkt. No. 75.] But, argued that MAPFRE's security agreement enjoyed seniority, by more than three years, over that of Oriental Bank's and that the bank's rights to setoff were subordinated to the pledge of the money in favor of MAPFRE. The debtor also argued that, regardless of seniority, Oriental Bank had failed to address the crux of the matter in this case, which is that the money was deposited into the debtor's account by mistake because the creditors for the work performed were MAPFRE and the debtor, jointly. As a result, the debtor argued that

14

under Puerto Rico law, money improperly paid must be returned to the Financing Authority, its legal owner. In the alternative, the debtor argued that the Financing Authority's erroneous electronic deposit of the money owed to MAPFRE and the debtor, jointly, does not free the Financing Authority from its obligation to pay them.

MAPFRE sets forth several arguments in its brief. [Adv. Dkt. No. 92-2.] Some coincide with the debtor; some do not. First, it asserts that under Puerto Rico law, there is an obligation to restore a thing received by error. MAPFRE also argues that its security interest is superior and has priority over Oriental Bank's security interest. It also claims that the money deposited into the debtor's account was never property of the debtor because the debtor only possessed a legal, not an equitable interest, over the money and had to hold in trust for MAPFRE under the indemnity agreement. Additionally, MAPFRE states that the money could not be considered property of the debtor until completion of the construction project and full payment to all suppliers of labor and materials. And, that MAPFRE's right of subrogation over payments held by the debtor are superior to the rights of other creditors, even when the money has been attached by another creditor first. Finally, MAPFRE contends that Oriental Bank could not setoff the money because only mutual debts that are due, determined, demandable, and not subject to any retention, can be setoff under Puerto Rico law.

The Financing Authority in its brief adopted MAPFRE's position. [Adv. Dkt. No. 93.] It alleged that it is entitled to the return of the money because the electronic transfer was made by mistake and reached the debtor's account by error and inadvertence. And, that its erroneous payment never became due to Oriental Bank because the bank is precluded from extinguishing debts owed by the debtor through the confiscation of another party's property.

It requests that the court order Oriental Bank to deliver to MAPFRE the money which the Financing Authority erroneously deposited into the debtor's account at Oriental Bank. The Financing Authority did not address what legal obligation it has, if any, to pay again the progress-payment money to MAPFRE and the debtor, jointly.

Oriental Bank asks the court to enter summary judgment in its favor. [Adv. Dkt. No. 112.] It defends its right to a pre-petition setoff under the Puerto Rico Civil Code, the Puerto Rico Commercial Transactions Act, and the line of credit agreement it had with the debtor. It argues that the Financing Authority made no error in the electronic transfer because the Financing Authority inputted into the automated-clearing-house-payment system the correct account number of the debtor's account at Oriental Bank and the correct routing number of Oriental Bank.

The bank also argues that it was fully secured as of the date of the setoff considering that the debtor had pledged its accounts receivable in its favor and represented that such accounts receivable were free and clear of any liens, except for the one being created through the pledge in favor of the bank. Additionally, the bank posits that MAPFRE did not have a senior lien over the money because under Puerto Rico law, a depositor consents to the bank's use of the funds deposited in a bank and that its secured interest and priority over any funds were further perfected as soon as the money was deposited in the account on which no other creditor had control. It asserts that under the Puerto Rico Commercial Transactions Act, a bank in which a deposit account is maintained may exercise a right of setoff against a secured party that holds a secured interest in the deposit account. And, that those rights may not be

16

suspended or modified by the perfection of a security interest in the account, unless the bank agrees to the modification through an authenticated record.

Finally, Oriental Bank points out that if its pre-petition setoff is avoided and the repayment for the line of credit is reversed, then its secured claim would not be extinguished, and would become a valid and enforceable pre-petition claim, secured by collateral property of the estate.

The chapter 7 trustee joined MAPFRE's position. [Adv. Dkt. No. 136.] She argues that the Financing Authority is liable to MAPFRE because a payment made in error does not extinguish its obligation. She asks that the court order the Financing Authority to pay the money to MAPFRE correctly, regardless of any claims that it may have against the debtor or Oriental Bank for said amounts. In the alternative, the trustee contends that Oriental Bank should pay MAPFRE the amount it improperly setoff because the funds were subject to a trust in benefit of MAPFRE and destined for payment of supplies pursuant to the indemnity agreement. And, the trustee also invokes this court's discretion to disallow the setoff on equitable grounds.

The court rules in favor of the Financing Authority, MAPFRE, and the trustee for the reasons stated below.

## VI. APPLICABLE LAW AND DISCUSSION.

### (a) Setoff under section 553

"The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" Citizens Bank v. Strumpf, 516 U.S. 16, 18 (1995) (quoting Studley v.

Boylston Nat. Bank, 229 U.S. 523, 528 (1913). Section 553(a) makes applicable a creditor's state law, pre-petition right to setoff where four conditions exists: (1) the creditor holds a pre-petition claim against the debtor; (2) the creditor also owes a pre-petition debt to the debtor; (3) the claim and debt are mutual; and (4) the claim and debt are valid and enforceable. 5 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 553.01[1] (16th ed. 2019).

"Section 553 does not create a right of setoff." Wiscovitch-Rentas v. Banco Popular De P.R. (In re Rivera), 600 B.R. 132, 151 (1st Cir. B.A.P. 2019). "Rather, the section merely recognizes and preserves setoff rights that exist under other applicable law, and then only to the extent that the conditions of section 553 are satisfied." 5 Collier on Bankruptcy ¶ 553.01[2]. "A right of set-off is not a security interest." Wiscovitch-Rentas, 600 B.R. at 151 (quoting United States v. Fleet Bank (In re Calore Express Co.), 288 F.3d 22, 47 (1st Cir. 2002)). "[T]he threshold determination in every case involving section 553 is the source of the alleged setoff." 5 Collier on Bankruptcy ¶ 553.01[2]. Under section 553, debts cannot be setoff unless they are mutual and mutuality requires that those debts be owed between the same parties, acting in the same capacity. 5 Collier on Bankruptcy ¶ 553.03.[3]. "[T]he mutuality requirement is strictly construed against the claimant[.]" Kitaeff v. Vappi & Co., 140 B.R. 608, 614 (Bankr. D. Mass. 1992).

"[A]llowing setoff undermines a basic premise of bankruptcy law, equality among creditors, by 'permitting a creditor to obtain full satisfaction of a claim by extinguishing an equal amount of the creditor's obligation to the debtor . . . in effect, the creditor receives a 'preference.'" Darr v. Muratore, 8 F.3d 854, 860 (1st Cir. 1993) (quoting In re Bevill, Bresler

& Schulman Asset Mgmt. Corp., 896 F.2d 54, 57 (3d Cir. 1990)).  As a result, setoff in the

context of a bankruptcy is not automatic.

Setoffs are permissive and courts have discretion to disallow them for various reasons,

including:

> (1) general equitable principles; (2) public policy grounds; (3) whether the
> Code's goals and objectives are being met; (4) where it would jeopardize a
> debtor's ability to reorganize; (5) in liquidation cases where disallowance would
> result in a preference or priority over other unsecured creditors; (6) where
> justice so dictates; and (7) where other 'compelling circumstances' exist.

Faasoa v. Army & Air Force Exch. Serv. (In re Faasoa), 576 B.R. 631, 642 (Bankr. S.D. Cal. 2017);

see also Official Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re Bennett

Funding Grp.), 146 F.3d 136, 140 (2d Cir. 1998) ("[A]llowance of a setoff is a decision that lies

within the sound discretion of the bankruptcy court."); FDIC v. Bank of America, 701 F.2d 831,

836-37 (9th Cir.) ("Setoff will not be permitted when it would be inequitable or contrary to

public policy to do so."), cert. denied, 464 U.S. 935 (1983).

Two types of setoff are at issue here. The first, is a setoff under the Puerto Rico Civil

Code, which may be exercised without a security interest. The second, a setoff done by a

secured party that holds a security interest in a deposit account perfected by control under the

Puerto Rico Commercial Transactions Act.

### (b) *Setoff under the Puerto Rico Civil Code*

Under the Puerto Rico Civil Code, the equivalent of setoff is compensation. United

Structure of Am., Inc. v. G.R.G. Eng'g., 9 F.3d 996, 1000 (1st Cir. 1993).  Article 1149 of the Civil

Code provides that setoff or "[c]ompensation shall take place when two (2) persons, in their

own right, are mutually creditors and debtors of each other." P.R. Laws Ann. tit. 31, § 3221.

And, article 1150 sets forth the requirements for setoff as follows:

(1) That each of the persons bound should be so principally, and that he be at the same time the principal creditor of the other; (2) That both debts consist of a sum of money or, when the things due are perishable, that they be of the same kind and also of the same quality, if the latter should have been stipulated; (3) That both debts are due; (4) That they be determined and demandable; (5) That none of them is subject to any retention or suit instituted by a third person, and of which due notice has been given the debtor.

P.R. Laws Ann. tit. 31, § 3222.

The First Circuit Bankruptcy Appellate Panel has held that "a bank is allowed to setoff funds deposited in a debtor's general account against amounts owed to it by the depositor." Wiscovitch-Rentas, 600 B.R. at 152 (quoting Fuste v. Eurobank & Tr. Co. (In re Almacenes Gigante, Inc.), 159 B.R. 638, 643 (Bankr. D.P.R. 1993). "A bank's right to set-off is limited to deposits made in good faith, in the ordinary course of business, and subject to withdrawal at the will of the depositor[.]" Constructora Maza, Inc. v. Banco de Ponce, 616 F.2d 573, 579 (1st Cir. 1980).  To setoff, the debtor's account must be a general deposit account. See (In re Almacenes Gigante, Inc.), 159 B.R. at 643 ("[W]hen a bank holds funds of the debtor in a special account, known by the bank to be dedicated to a special use, the bank cannot set off those funds against its claim against the debtor.") Courts have found that the obligations are not mutual if the debtor is unable to reach the funds in the bank account.  See In re Ben Franklin Retail Store, Inc., 202 B.R. 955, 957 (Bankr. N.D. Ill. 1996); 5 Collier on Bankruptcy ¶ 553.03[3][c] .

**(c) Setoff under the Puerto Rico's Commercial Transactions Act**

Puerto Rico's Commercial Transactions Act governs the perfection of security interests in deposit accounts, like the one the debtor had at Oriental Bank.  P.R. Laws Ann. tit. 19, §

2219(a). It defines a deposit account as "a demand, time, savings, passbook, or similar account maintained with a bank." P.R. Laws Ann. tit. 19, § 2212(29).

Under section 9-314 of the CTA, a security interest in a deposit account is perfected by control of the collateral. P.R. Laws Ann. tit. 19, § 2264.  Section 9-104 of the CTA establishes that a secured party has control of a deposit account if "[t]he secured party is the bank with which the deposit account is maintained."  P.R. Laws Ann. tit. 19, § 2214(a)(1).  Section 9-607 of the CTA states that when agreed, after default, if a secured party holds a security interest in a deposit account perfected by control, it "may apply the balance of the deposit account to the obligation secured by the deposit account." P.R. Laws Ann. tit. 19, § 2367(a)(4).  Section 9-340 of the CTA provides for the right of setoff of a bank "against a secured party that holds a security interest in the deposit account." P.R. Laws Ann. tit. 19, § 2290(a). And, section 9-341 of the CTA provides that a bank's rights with respect to a deposit account cannot be modified or suspended, unless agreed by the bank "in an authenticated record." P.R. Laws Ann. tit. 19, § 2291.

### (d) Oriental Bank's setoff

Under the CTA, Oriental Bank had a prepetition security interest in the debtor's account perfected by its control of the account. And, section 8.5 of the line-of-credit agreement between the debtor and Oriental Bank allowed the bank to setoff obligations of the debtor against deposits. [Oriental Bank's SUF ¶ 22, Adv. Dkt. No. 111; Loan Contract, Adv. Dkt. No. 111-1, p.18.]

Oriental Bank alleges that its setoff was appropriate and allowed by the provisions of article 1149 of the Civil Code, section 9-340 of the CTA  and the contractual provisions of the

line-of-credit agreement. [Adv. Dkt. No. 112, pp. 8-9.] The bank does not distinguish one setoff from the other. But, it seems to rely more on the CTA. Its argument focuses on its secured interest, which was perfected when the money was electronically deposited into the debtor's account by the Financing Authority and came under the bank's control.

Section 9-109 of the CTA establishes that "[t]he provisions of the Civil Code of Puerto Rico with respect to pledges and transmissions of credits shall not apply to transactions governed by this chapter." P.R. Laws Ann. tit. 19, § 2219(e). And, transactions creating a security interest in personal property fall under the scope of the CTA. P.R. Laws Ann. tit. 19, § 2219(a). As such, the court understands that Oriental Bank's setoff was done pursuant to section 9-340 of the CTA. P.R. Laws Ann. tit. 19, § 2290(a).

Having exercised its setoff rights, Oriental Bank frames the dispute as a battle solely between it and MAPFRE, and thus, which security interest has priority: Oriental Bank's or MAPFRE's. But, because the dispute between the Financing Authority and Oriental Bank is dispositive and governed by the Civil Code's provision of payments made in error– not the CTA–Oriental Bank must return to the Financing Authority the electronic deposit made in error by it to Oriental Bank. And, as MAPFRE's lien on monies held by the Financing Authority is superior to Oriental Bank's lien, the money goes to MAPFRE and the trustee, jointly.

### (e) Article 1795 Restitution

Article 1795 of the Puerto Rico Civil Code states that "[i]f a thing is received when there was no right to claim it and which, through an error, has been unduly delivered, there arises an obligation to restore the same." P.R. Laws Ann. tit. 31, § 5121 ("article 1795 restitution"). A person that makes a payment by mistake may bring an article 1795 restitution action to

recover the erroneous payment.  Article 1800 establishes that the proof of payment and of the error "is incumbent upon the person who claims to have made the same." P.R. Laws Ann. tit. 31, § 5126. Article 1801 creates the presumption that "there was an error in the payment when a thing which was never owed or which was already paid for has been delivered, but the person from whom the return is asked may prove that the delivery was made through liberality or for any other sufficient cause."  P.R. Laws Ann. tit. 31, § 5127.

Three requirements must be met for article 1795 restitution: (1) the payment had to be made with the intention of extinguishing an obligation; (2) the payment had to be made without just cause; and (3) the payment was made by mistake and not by mere liberality or by any other concept. E.L.A. v. Crespo Torres, 180 P.R. Dec. 776, 793-94 (2011); Sepulveda, v. Departamento de Salud, 145 P.R. Dec. 560, 566-67 (1998).

Prior to Crespo Torres, article 1795 restitution only applied to payments made by errors of fact, not of law.[3]  Sepulveda, 145 P.R. Dec. at 568.  But, the distinction was eliminated in Crespo Torres.  Crespo Torres, 180 P.R. Dec at 795.  As a result, if the Financing Authority satisfies the requirements of the Crespo Torres case, Oriental Bank must restore under article 1795 the erroneous deposit regardless of whether the error was one of fact or law.

In this case, the Financing Authority made an automated-clearing-house deposit to the debtor's account at Oriental Bank. Oriental Bank focuses on the fact that the Financing Authority, using the electronic-money-transfer system, inputted into the system the correct bank account number of the debtor, the correct routing number of Oriental Bank, and the

---

[3] A payment made by error of fact was characterized as a human error, such as a mathematical computation. Crespo Torres, 180 P.R. Dec at 795.  A payment made by error of law was one where the payor's action did not follow the applicable legal norm. Sepulveda, 145 P.R. Dec. at 568.

23

correct dollar amount owed by the Financing Authority to MAPFRE and the debtor, jointly. But, that electronic deposit went against the instructions sent to the Financing Authority by MAPFRE and the debtor in letters dated February 16 and 22, 2016, respectively. Those letters notified the Financing Authority that MAPFRE had received and paid claims under its bonds and that the entire outstanding balance due under the construction agreement, including the progress payments, were to be made payable jointly to MAPFRE and the debtor.

Article 12 of the Civil Code provides that "[i]n matters which are the subject of special laws, any deficiency in such laws shall be supplied by the provisions of this title." P.R. Laws Ann. tit. 31 §12. Case law interpreting article 12 holds that a special statute governing a specific matter prevails over a general article. Cordova & Simonpietri Agency v. Crow Am. Insurance Co., 112 P.R. Dec. 797, 800 (1982). Deposits accounts fall within the scope of personal property governed by the CTA. And, section 9-109 states that the provisions of the Civil Code do not apply to transactions governed by the CTA. P.R. Laws Ann. tit. 19, § 2219(e). But, the CTA does not address payments made by a third-party in error by a deposit into a bank account or restitution of payments made in error. As such, that deficiency in the CTA is governed by article 1795, which expressly addresses the dispositive dispute in this case: the money erroneously deposited by the Financing Authority into the debtor's account at Oriental Bank.

The court finds that the Crespo Torres requirements for article 1795 restitution are met. The Financing Authority made a progress-payment due for the project under the construction agreement, but the payment was made without just cause and by mistake because the Financing Authority knew that the payment belonged to and had to be made to

MAPFRE and the debtor, jointly. Accordingly, the Financing Authority is entitled under article 1795 to restitution of the money erroneously deposited in Oriental Bank. But, as the Financing Authority has requested that the money be delivered directly to MAPFRE and the trustee, jointly, it shall be so ordered.[4]

## VII.  CONCLUSION.

Based on the foregoing, the motions for summary judgment filed by MAPFRE [Adv. Dkt. No. 92] and joined by the chapter 7 trustee [Adv. Dkt. No. 136], and by the Financing Authority [Adv. Dkt. No. 93] are granted. Oriental Bank is ordered, as requested by the Financing Authority, to turn over to MAPFRE and  the chapter 7 trustee, jointly, the money it setoff from the debtor's bank account.

In Ponce, Puerto Rico, this 31st day of March 2020.

*Edward A. Godoy*

Edward A. Godoy
U.S. Bankruptcy Judge

---

[4] The court sees no reason to require the Financing Authority to pay twice before Oriental Bank can be required to disgorge the erroneous deposit.